1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

YORDAN PETROV,

11

Plaintiff,

12

v.

13

HEBERT RESEARCH, INC., et al.,

14

Defendants.

CASE NO. C14-0754JLR

ORDER

15

## I.   INTRODUCTION

16

This matter comes before the court on Defendants Jim Hebert and Hebert

17

Research, Inc.'s "Supplement on Definition of National Origin."  (Supp. (Dkt. # 48).)  At

18

the pretrial conference, the parties and the court discussed the proper scope of Plaintiff

19

Yordan Petrov's asserted protected class as it pertained to Defendants' motion in limine

20

number 5.  (*See* 7/20/15 Min. Entry (Dkt. # 47); Def. MILs (Dkt. # 29); Resp. to MILs

21

(Dkt. # 31).)  The court invited the parties to file supplemental briefing on the issue.

22

Having considered Defendants' submission, the parties' briefing on Defendants' motions

ORDER- 1

1 in limine, the balance of the record, and the relevant law, the court clarifies its ruling on

2 motion in limine number 5 as follows.

3 ## II.   BACKGROUND

4      This is an employment discrimination case.  The pretrial order states, without

5 further elaboration, that Mr. Petrov brings the following claims:  "1. Race discrimination

6 and retaliation in violation of Section 1981; [and] 2. National origin discrimination and

7 retaliation in violation of Title VII."  (Pretrial Order (Dkt. # 46) at 2.)  The complaint

8 alleged that Plaintiff "is a person of Bulgarian national origin and of Eastern European

9 and Bulgarian race."  (Compl. (Dkt. # 1) ¶ 12.)  The question of the scope of Mr. Petrov's

10 asserted protected class arose for the first time at the pretrial conference.  The question

11 arose because Mr. Petrov's counsel stated that Mr. Petrov intends to support his

12 discrimination claims with evidence of Mr. Hebert's allegedly discriminatory actions

13 toward other employees of "Eastern European" (specifically, Bulgarian, Polish, and

14 Russian) backgrounds.  Defendants requested the opportunity to submit supplemental

15 briefing on the issue, which the court granted.  Defendants' supplemental briefing is now

16 before the court.

17 ## III.   ANALYSIS

18 **A.   National Origin**

19      "Title VII prohibits discrimination in employment on the grounds of "'race, color,

20 religion, sex, or national origin.'"  *E.E.O.C. v. Peabody W. Coal Co.*, 773 F.3d 977, 983-

21 84 (9th Cir. 2014) (quoting 42 U.S.C. § 2000e-2(a)).  The Supreme Court has stated,

22 "The term 'national origin' on its face refers to the country where a person was born, or,

1   more broadly, the country from which his or her ancestors came." *See Espinoza v. Farah*

2   *Mfg. Co.*, 414 U.S. 86, 88 (1973).[1]  The Ninth Circuit, however, defines "national origin"

3   somewhat more broadly to include "the place"—not necessarily the nation—"in which

4   one's ancestors lived." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 154

5   F.3d 1117, 1119 (9th Cir. 1998); *see also Pejic v. Hughes Helicopters, Inc.*, 840 F.2d

6   667, 673 (9th Cir. 1988) (finding that "Serbian" was a protected national origin, even

7   though a Serbian nation did not exist at the time).  That definition squares with the Equal

8   Employment Opportunity Commission's interpretation, which "defines national origin

9   discrimination broadly as including, but not limited to, the denial of equal employment

10   opportunity because of an individual's, or his or her ancestor's, place of origin; or

11   because an individual has the physical, cultural or linguistic characteristics of a national

12   origin group."  29 C.F.R. § 1606.1 (2012).

13        Defendants maintain that Mr. Petrov improperly seeks to define his national origin

14   as "Eastern European" rather than as "Bulgarian."  (*See* Supp.)  It is not clear to the court

15   that such is Mr. Petrov's intent.  (*See* Compl. ¶ 12 (alleging that Mr. Petrov is of

16   "Bulgarian national origin and of Eastern European and Bulgarian race").)  Nonetheless,

17   in light of Mr. Petrov's counsel's ambiguous statements at the pretrial conference, the

18   court will resolve the matter now.

19

---

20      [1] Title VII does not define "national origin."  *Peabody W. Coal Co.*, 773 F.3d at 984.  In the
"only direct definition," *Espinoza*, 414 U.S. at 88, of the phrase found in the legislative history,

21   Representative James Roosevelt stated: "'[N]ational origin' means national.  It means the country from
which you or your forbearers came from.  You may come from Poland, Czechoslovakia, England, France,
or any other country."  EEOC, Legislative History of Titles VII and XI of the Civil Rights Act of 1964, at

22   3179–80 (1968); 110 Cong. Rec. 2549 (1964).

1    Whatever the outer limits of the Ninth Circuit's definition of "the place in which

2 one's ancestors lived" may be, they do not extend to such an expansive geographical

3 category as "Eastern Europe." *See Dawavendewa*, 154 F.3d at 1119.  After all, "Eastern

4 Europe" comprises half of a continent and a multitude of countries.  To define "Eastern

5 Europe" as someone's national origin threatens to render the term meaningless.  *See*

6 *Chuang v. Univ. of Calif. Davis, Bd. of Trustees*, 225 F.3d 1115, 1129 (9th Cir. 2000)

7 (finding that "Asian" origin was insufficiently granular to meet the definition of "national

8 origin" under Title VII); *see also Lam v. Univ. of Haw.*, 40 F.3d 1551, 1561 n.16 (9th Cir.

9 1994).  Therefore, the court holds that Mr. Petrov may not bring a Title VII claim for

10 discrimination based on his Eastern European national origin.  For purposes of his Title

11 VII claim, Mr. Petrov's protected class is that of Bulgarian national origin.[2]

12 **B.    Race**

13    Section 1981 "provides a federal remedy against race-based employment

14 discrimination in the private and public sectors."  *Magana v. Com. of the N. Mariana*

15 *Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997), *as amended* (May 1, 1997) (citing

16 42 U.S.C. § 1981(a), (c) and *Runyon v. McCrary*, 427 U.S. 160, 168-72 (1976)).  It does

17 not, however, apply to discrimination solely on the basis of national origin.  *See Runyon*,

18 427 U.S. at 168 (noting that Section 1981 applies only to race-based discrimination).

19    Mr. Petrov alleges that he is of "Eastern European and Bulgarian race."  (Compl.

20 ¶ 12.)  Defendants devote a single footnote to the issue of Mr. Petrov's race.  (*See* Supp.

21

---

22    [2] Mr. Petrov does not assert claims for race discrimination under Title VII.  (*See* Pretrial Order at 2.)

ORDER- 4

at 1 n.1.)  The footnote states perfunctorily:  "His race is White."  (*Id.*)  In support of that

statement, Defendants cite not to case law, but rather to certain administrative materials

explaining that, for the purposes of "the collection of federal data on race and ethnicity"

the Office of Management and Budget has "defined five racial categories:  American

Indian . . .; Asian; Black . . . ; Native Hawaiian . . . ; and White."  (*Id.*)

      Defendants' position that there are only five rigidly defined categories of race

relevant to Section 1981 claims does not comport with either Supreme Court or Ninth

Circuit precedent.  The Supreme Court has held:

> Based on the history of § 1981, we have little trouble in concluding that
> Congress intended to protect from discrimination identifiable classes of
> persons who are subjected to intentional discrimination *solely because of
> their ancestry or ethnic characteristics.*  Such discrimination is racial
> discrimination that Congress intended § 1981 to forbid, *whether or not it
> would be classified as racial in terms of modern scientific theory.*

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (emphasis added); *see also
id.* at 610 (finding no support for the contention that "Arabs, Englishmen, Germans, and

certain other ethnic groups [who might be deemed Caucasians today] are to be considered

a single race" under Section 1981).  Accordingly, the Ninth Circuit has consistently

applied Section 1981 to claims for "racial, ancestral or ethnic discrimination."  *Magana v.

Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446-47 (9th Cir. 1997), *as amended*

(May 1, 1997); *see, e.g.*, *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850

(9th Cir. 2004) (affirming judgment in favor of a "Hispanic" plaintiff because the "record

shows that [the defendant] considered [the plaintiff] to be of a different race than himself

and chose to harass [the plaintiff] based on his ancestry and ethnic characteristics");

1  *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("[T]he Supreme Court has

2  ruled that when Congress enacted § 1981, it intended "race" to be defined broadly, to

3  cover discrimination against ethnic groups such as the Chinese."); *Karim-Panahi v. L.A.*

4  *Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (holding that a plaintiff could bring a

5  Section1981 claim for discrimination on the basis of his "Middle-Eastern Iranian

6  [r]ace."); *Benigni v. City of Hemet*, 879 F.2d 473, 477-78 (9th Cir. 1988) (finding that an

7  Italian-American could bring a Section 1981 claim because "targets of race

8  discrimination for purposes of section 1981 include groups that today are considered

9  merely different ethnic . . . groups, such as Arabs, Jews, Germans and Italians").

10       Moreover, a "distinctive physiognomy is not essential to qualify for § 1981

11  protection." *Saint Francis Coll.*, 481 U.S. at 613.  This is because "[a] group's ethnic

12  characteristics encompass more than its members' skin color and physical traits." *El-*

13  *Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005).  Rather, "[n]ames are often a

14  proxy for race and ethnicity." *Id.*  The Supreme Court has rejected the contention that

15  Section 1981 "does not encompass claims of discrimination by one Caucasian against

16  another." *Saint Francis Coll.*, 481 U.S. at 609-10.

17       Consequently, contrary to Defendants' contention, the color of Mr. Petrov's skin

18  does not define his race for purposes of Section 1981.  *See El-Hakem*, 415 F.3d at 1073.

19  The court takes judicial notice of the fact that Bulgarians constitute a distinct ethnic

20  group within the overarching category of the "White" race.  *See, e.g.*, *Bulgaria*, United

21  States Central Intelligence Agency, *The World Factbook*, https://www.cia.gov/library/

22  publications/the-world-factbook/geos/bu.html (last visited July 24, 2015) (listing

ORDER- 6

1  Bulgarian as the majority ethnic group in Bulgaria); Fed. R. Evid. 201(b)(2) (permitting

2  court to take judicial notice of facts that are not subject to "reasonable dispute" because

3  they are "capable of accurate and ready determination by resort to sources whose

4  accuracy cannot reasonably be questioned"). The fact that Mr. Petrov's ethnic group

5  happens to align with his nationality does not preclude the application of Section 1981.

6  "[T]he line between discrimination based on 'ancestry or ethnic characteristics,' and

7  discrimination based on 'place or nation of origin,' is not a bright one.  Often, the two are

8  identical as a factual matter." *Magana*, 107 F.3d at 1446, *as amended* (May 1, 1997)

9  (quoting *Saint Francis,* 481 U.S. at 614 (Brennan, J., concurring) (internal punctuation

10  omitted)).  Applying that principle, the Ninth Circuit found that a plaintiff who testified

11  she was discriminated against "because she was from the Philippines" could bring a

12  Section 1981 claim on the basis of her Filipino race in addition to a Title VII claim on the

13  basis of her national origin.  *Id.* at 1446-47; *see also Manatt*, 339 F.3d at 798 (holding

14  that a Chinese plaintiff could bring a Section 1981 claim for discrimination on the basis

15  of her Chinese ethnicity in addition to a Title VII claim for discrimination on the basis of

16  her national origin).  Therefore, the court concludes that Mr. Petrov may bring a Section

17  1981 claim for discrimination on the basis of his Bulgarian race.

18      The court does not agree, however, that Mr. Petrov may bring a Section 1981

19  claim for discrimination on the basis of his "Eastern European" race, as such.  "Eastern

20  Europe" describes a geographical area home to a diverse array of populations, some of

21  which share common racial, ethnic, or ancestral ties, but some of which do not.

22

1    Discrimination on the basis of such a broad geographical category is beyond the purview

2    of Section 1981.  *See Saint Francis Coll.*, 481 U.S. at 613.

3           Nonetheless, the court notes that Mr. Petrov advanced the concept of "Eastern

4    European" race because he contends that Mr. Hebert discriminates against not just ethnic

5    Bulgarians, but also ethnic Poles and Russians.  The Ninth Circuit has previously

6    approved of a similar theory.  Specifically, the Ninth Circuit affirmed judgment in favor

7    of a plaintiff of Honduran origin who had been discriminated against for being

8    "Hispanic."  *Pavon*, 192 F.3d at 908.  The Ninth Circuit found that the employer, who

9    subjected the plaintiff to a variety of racial, albeit inaccurate, slurs such as "beaner,"

10   "fucking Mexican" and the instruction to "go back to Columbia," "considered [the

11   plaintiff] to be of a different race than himself and chose to harass [the plaintiff] based on

12   his ancestry and ethnic characteristics."  *Id.* at 905, 908.  The same reasoning applies

13   here.

14          As discussed above, the geographical descriptor "Eastern European" is the

15   incorrect nomenclature to apply to a Section 1981 claim.  The more appropriate term is

16   "Slavic."  Broadly speaking, ethnic Slavs—a people that originated in the part of the

17   world recognized today as Eastern Europe—share a common ancestry and related

18   languages, as well as similar ethnic characteristics.  *See Slav*, Oxford English Dictionary

19   (2d ed. 1997); *Slav (people),* Encyclopedia Britannica, Britannica Academic,

20   http://academic.eb.com/EBchecked/topic/548156/Slav (last accessed July 24, 2015);

21   *Handbook of Language and Ethnic Identity: Disciplinary and Regional Perspectives, Vol.*

22   *1* ch. 17 (Fishman, J. and Garcia, O. eds., 2d ed. 2010) ("The Slavic World"); *Slavic,*

Merriam-Webster's Collegiate Dictionary (11th rd. 2003).  As such, they constitute an "identifiable class[] of persons" who could be "subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  *Saint Francis Coll.*, 481 U.S. at 613.[3]  Federal courts have accordingly recognized ethnic Slavs as a protected race under Section 1981.  *See, e.g.*, *Nedeltchev v. Sheraton St. Louis City Ctr. Hotel & Suites*, 335 F. App'x 656, 657 (8th Cir. 2009); *Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1333 (D. Utah 2008); *Portfolio Investments, LLC v. First Sav. Bank*, No. C12-104 RAJ, 2013 WL 1187622, at *5 (W.D. Wash. Mar. 20, 2013).

The court takes judicial notice of the fact that ethnic Bulgarians, Poles, and Russians are subgroups of the broader ethnic category of Slavs.  *See Bulgaria*, Central Intelligence Agency, *The World Factbook*, https://www.cia.gov/library/publications/the-world-factbook/geos/bu.html (last visited July 24, 2015); *Bulgaria*, Encyclopedia Britannica, Britannica Academic, http://academic.eb.com/EBchecked/topic/84090/Bulgaria (last accessed July 24, 2015); *Russia*, Encyclopedia Britannica, Britannica Academic, http://academic.eb.com/EBchecked/topic/513251/Russia (last accessed July 24, 2015); *Slav*, Oxford English Dictionary (2d ed. 1997); *Handbook of Language and Ethnic Identity* ch. 17; Fed. R. Evid. 201(b)(2).  Consequently, Mr. Petrov's asserted

---

[3] *See also Saint Francis Coll.*, 481 U.S. at 610 (concluding that Section 1981 should be interpreted as it would have been understood at the time of its enactment because "[t]he understanding of 'race' in the 19th century . . . was different.  Plainly, all those who might be deemed Caucasian today were not thought to be of the same race at the time § 1981 became law."); John Tehranian, Performing Whiteness: Naturalization Litigation and the Construction of Racial Identity in America, *The Yale Law Journal*, Vol. 109, No. 4. (Jan., 2000), pp. 825-827 (noting that Americans historically considered Slavs to be of a different race).

1  claim for discrimination due to his "Eastern European" race is more properly expressed

2  as a claim for discrimination due to his Slavic race.  Therefore, the court concludes that

3  Mr. Petrov may alternatively bring a Section 1981 claim for discrimination on the basis

4  of his Slavic race.[4]

5  **C.    Defendants' Motion in Limine Number 5**

6          In light of the foregoing findings, the court revisits its oral ruling on Defendants'

7  motion in limine number 5.  In that motion, Defendants moved to exclude evidence of

8  discriminatory conduct directed at employees other than Mr. Petrov.  (Def. MIL at 9-10.)

9  Mr. Petrov responded that Mr. Hebert's allegedly discriminatory conduct towards

10 "persons of Russian, Polish, Bulgarian, or other Eastern European national origin" is

11 admissible to show bias.  (Resp. to MIL at 15-16.)

12         In general, evidence of discrimination towards other employees of the same

13 protected class may be offered to show bias or intent to discriminate.  *See, e.g.*,

14 *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Lyons v. England*,

15 307 F.3d 1092, 1110-11 (9th Cir. 2002).  Such evidence, however, is subject to Rule 403

16 considerations of unfair prejudice and confusion of the issues.  *See, e.g.*, *Tennison v.*

17 *Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); Fed. R. Civ. P. 403.

18         The Ninth Circuit has held that evidence of an employer's actions toward a broad

19 racial category of persons is inapposite to a national origin discrimination claim that

20 implicates only a subgroup of that category.  *See Chuang*, 225 F.3d at 1129 ("An

21

22         [4] The court emphasizes that substituting the descriptor "Slavic" for "Eastern European" changes only the technical basis for Mr. Petrov's claim, not the theory behind it.

1  employer's favorable treatment of 'Asian' employees does not answer a claim of

2  discrimination based on [Chinese] national origin."); *see also Lam*, 40 F.3d at 1561 n.16

3  ("[I]t is significant that [the plaintiff] and the Asian male candidate were of different

4  national origins—[the plaintiff] being Vietnamese-French, the male candidate, Chinese,

5  [because the plaintiff] alleged . . .  national origin discrimination, thereby raising this

6  distinction as relevant under Title VII.").  So too here.  Evidence of Mr. Hebert's

7  discrimination against employees of other "Eastern European" national origins is not

8  relevant to Mr. Petrov's Title VII claim for discrimination on the basis of Bulgarian

9  national origin.  Therefore, such evidence is inadmissible with respect to that claim.

10       However, evidence showing that Mr. Hebert's discriminated against employees

11  that he "considered . . . to be of a different race than himself and chose to harass . . .

12  based on their [Slavic] ancestry and ethnic characteristics" is relevant to Mr. Petrov's

13  Section 1981 claim for discrimination on the basis of his Slavic race.  *See Pavon*, 192

14  F.3d at 908.  Such evidence is highly probative because those employees are part of the

15  same protected class as Mr. Petrov and were allegedly discriminated against by the same

16  supervisor.  Therefore, the probity of such evidence outweighs its prejudice to

17  Defendants.  *See* Fed. R. Civ. P. 403.  If Mr. Petrov offers such evidence at trial, the court

18  will provide a limiting instruction to the jury that explains for what purpose and claim the

19  evidence may be considered.

20  //

21  //

22  //

1

## IV.   CONCLUSION

2      For the foregoing reasons, the court clarifies its oral ruling on Defendants' motion

3  in limine number 5.  The motion is granted in part and denied in part as described above.

4      Dated this 24th day of July, 2015.

5

6

7

JAMES L. ROBART
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 12